[No. D012274. Fourth Dist., Div. One. May 2, 1991.]

SCOTT WEINER, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

COUNSEL

Finkelstein & Finkelstein and Norman M. Finkelstein for Plaintiff and Appellant.

John W. Witt, City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, and James M. Chapin, Deputy City Attorney, for Defendants and Respondents.

Rutan & Tucker, John L. Fellows III, City Attorney (Irvine), and Hans Van Ligten, Assistant City Attorney (Laguna Beach), as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**HUFFMAN, Acting P. J.**—On this appeal, we determine the trial court properly sustained without leave to amend the City of San Diego's (City) demurrer to Scott Weiner's complaint on the basis of public entity immunity under Vehicle Code[1] section 17004.7. Weiner's complaint had sought damages for his injuries received when the car he was driving was hit by a car driven by a fleeing criminal suspect during a high-speed police chase.

Weiner contends section 17004.7 has been repealed and such repeal should be given retrospective effect so as to apply to his case. He alternatively argues the written policy adopted by City does not comply with the minimum requirements of this section for immunity and asserts the statute should be construed to require a public agency to adopt a policy on vehicular pursuits in practice as well as in principle.

Forty-two California cities have jointly filed an amici curiae brief in support of City's position section 17004.7 is alive and well and was fully complied with in this case. We agree and affirm.

FACTUAL AND PROCEDURAL HISTORY

The facts taken as true from the complaint are as follows. On January 12, 1989, Weiner suffered injuries when his vehicle was struck in the intersection of Meade Avenue and 43d Street in San Diego by a 1972 Datsun 240Z driven by Steven Lynn Cooper, who was being pursued by San Diego Police Officer Steven Kincade in the course and scope of his employment.

After his claim against City was deemed denied by operation of the law, Weiner timely filed a complaint for damages against Kincade, City, Cooper, and Vence August, the owner of the Datsun which Cooper was driving. The first cause of action alleged Cooper and August were negligent based on Cooper's driving of the Datsun in a "dangerous, reckless, and careless manner" in violation of the basic speed law (§ 22350), in violation of the maximum speed limit (§ 22348), and in violation of a steady red traffic signal (§ 21450). August was alleged to have consented to Cooper's negligent driving.

The second cause of action alleged the negligence of Kincade and City. Kincade was alleged to have chased after Cooper "at high rates of speed, without warning lights, sirens or other warning devices," in violation of section 21056. City was alleged to be the owner of the vehicle which

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

Kincade was driving at the time of the accident and to have thus consented to his negligent driving.

The third cause of action was against City alone and alleged negligent supervision by City in its hiring, selection, supervision and control of its employee Kincade concerning his driving on public streets and highways.

City and Kincade filed a demurrer to the complaint on grounds of immunity under sections 17004 and 17004.7 and asked the trial court to take judicial notice of City's policy on pursuit procedures adopted by resolution No. R-271895 on September 19, 1988.

After considering all papers, hearing oral argument and judicially noticing the City's resolution, the trial court found the policy enacted by City substantially complied with the requirements of section 17004.7, subdivision (c), and sustained the demurrer filed by Kincade and City for failure to state a cause of action without leave to amend. The court thereafter entered orders dismissing with prejudice Weiner's complaint as to Kincade and City. Weiner has timely appealed from the dismissal orders.[2]

## DISCUSSION

Section 17004.7 defines the liability of a public agency employing peace officers conducting vehicular pursuits. This section provides:

"(a) The immunity provided by this section is in addition to any other immunity provided by law. The adoption of a policy by a public agency pursuant to this section is discretionary.

"(b) A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

"(c) If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards:

---

[2] An order of dismissal when filed constitutes a judgment for all effective purposes. (Code Civ. Proc., § 581d.) Weiner does not argue in his appellate briefs concerning the dismissal and ruling on the demurrer without leave to amend as to Officer Kincade. We thus consider his appeal as to Kincade has been abandoned. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 41 [210 Cal.Rptr. 762, 694 P.2d 1134].)

"(1) It provides that, if available, there be supervisory control of the pursuit.

"(2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit.

"(3) It provides procedures for coordinating operations with other jurisdictions.

"(4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated.

"(d) A determination of whether a policy adopted pursuant to subdivision (c) complies with that subdivision is a question of law for the court." (Added by Stats. 1987, ch. 1205, § 1.)

The Historical and Statutory Notes in West's Annotated California Codes (1991 pocket supp.) concerning the 1987 legislation to section 17004.7 state:

"Sections 2 and 3 of Stats. 1987, c. 1205 provide: [¶] 'Sec. 2. This act applies only to actions based upon acts or omissions occurring on or after January 1, 1988, and the adoption of a policy by the public entity that complies with Section 17004.7 of the Vehicle Code. [¶] Sec. 3. This act shall become operative only if Assembly Bills 344, 1530, 1909, and 2616, [Stats. 1978, cc. 1202, 1203, 1204, 1208, respectively] and Senate Bills 23, 1382, 1526, and 1598 [Stats. 1987, cc. 1209, 1200, 1206, 1207, respectively] are all enacted and become effective on or before January 1, 1988 [all enacted and effective Jan. 1, 1988]."

The notes concerning the 1989 legislation to section 17004.7 state: "Another § 17004.7, added by Stats. 1987, c. 1201, § 26, relating to similar subject matter, was repealed by Stats. 1989, c. 1360, § 157."

In the face of this section and its annotated notes, Weiner launches a three-part attack on the trial court's dismissal of his complaint. He first asserts section 17004.7, which was adopted twice in identical form in the 1987 legislation (Stats. 1987, ch. 1201, §§ 26 and 30, and Stats. 1987, ch. 1205, §§ 1 and 2), was completely repealed by the 1989 legislation

which states "Section 17004.7 of the Vehicle Code, as added by Chapter 1201 of the statutes of 1987, is repealed." (Stats. 1989, ch. 1360, § 157.) He argues such repeal evidences the Legislature's intent not to allow immunity in situations like this where the negligence of an entity has some part in causing an innocent person injuries during a high speed chase. Because the repeal was effective at the time his complaint was pending and the demurrer was sustained, he contends public policy demands the statute be repealed retroactively to cover the time period for the accident in which he was struck by a fleeing suspect's car being negligently chased by an employee of City.

Wiener argues secondly that even if section 17004.7 has not been repealed, its language should not be interpreted to provide immunity as a matter of law when an entity complies with its requirements, but should be construed to require an issue of fact as to whether the policy adopted by the entity complies "in practice" with the statute.

Weiner finally challenges the written policy of City in this case and argues the trial court erred in finding it substantially complied with section 17004.7, subdivision (c). On any of these grounds, he claims the dismissal of his complaint must be set aside and the City's demurrer overruled.

As City and the amici curiae have pointed out, Weiner's first argument "tortures" the language of the statutes of 1989, chapter 1360, section 157, to come to his conclusion section 17004.7 is no longer in existence. Contrary to his numerous assertions in this regard, the language of the amending chapter is clear only the duplicate version of section 17004.7, that adopted by chapter 1201 in 1987, was repealed. This conclusion is further supported by legislative counsel Bion M. Gregory's "Twenty-ninth Report on LEGISLATION NECESSARY TO MAINTAIN THE CODES" which states:

"*Veh. C.* 17004.7 (as added by Ch. 1202, Stats. 1987) (Item 89-157) There are two identical Sections '17004.7' in the code (Ch. 1201, Stats. 1987; Ch. 1205, Stats. 1987). Section 17004.7, as added by Chapter 1201 of the Statutes of 1987, is superfluous and should be repealed."

Thus the only logical construction of the amendment is that such was for "housecleaning" purposes only and section 17004.7, as added by chapter 1205 of the 1987 statutes, is currently in effect and governs this case.[3]

---

[3] We view with wonderment Weiner's argument the duplicate enactment of section 17004.7 merged into one section which was then repealed by reference to only one of the enacting chapters. Although the Legislature by enacting those two identical sections in 1987 may have

■ As we noted in *Hooper* v. *City of Chula Vista* (1989) 212 Cal.App.3d 442 [260 Cal.Rptr. 495], a case decided before the effective date of section 17004.7 concerning the extent of statutory immunity for a public entity when a suspect is killed or injured while being pursued by police officers employed by the public entity, the Legislature gave considerable thought to suspect-caused accidents and resulting lawsuits as a problem needing correction before it took action to increase the immunity afforded to public entities by enacting section 17004.7. (*Id.* at p. 456.)

We specifically noted that, "In a document entitled 'Concurrence in Senate Amendments,' prepared by the Assembly Office of Research regarding Assembly Bill No. 1912, one of the two bills from which this section originated, the author comments: 'Supporters of the Senate amendments argue that the potential of civil liability for accidents caused by fleeing suspects may deter peace officers from pursuits to the detriment of public safety. *Also, in some instances suspects have sought to recover from public entities for injuries incurred during a pursuit.* This bill is intended to encourage public employers of peace officers to adopt express safe pursuit guidelines. [¶] 'According to the sponsors, it is hoped that the adoption of guidelines will "reduce the frequency of accidents" and help remove fear of liability for suspect-caused accidents from the decision of whether to undertake a pursuit. Public entities which choose not to adopt a policy would be subject to existing statutory and case law regarding the public agency's liability for injuries resulting from suspect pursuits.' (Assem. File Analysis of the Assem. Office of Research, Concurrence in Sen. Amendments, Assem. Bill No. 1912 (1987-1988 Reg. Sess.) p. 2, italics added.)" (*Hooper* v. *City of Chula Vista, supra,* 212 Cal.App.3d at p. 456, fn. omitted.) These statements, together with the plain language of section 17004.7, show the Legislature was concerned with the liability of public entities when an injury or death is caused by a fleeing suspect.

In *Hooper,* we also commented about existing case law which pointed out the seemingly conflicting duties of a police officer to not only "conduct a pursuit reasonably and prudently under all of the circumstances" (*Hooper* v. *City of Chula Vista, supra,* 212 Cal.App.3d at p. 453), but also "to carry out his or her obligation to promote law-abiding, orderly conduct, including, where necessary, to detain and arrest suspected perpetrators of offenses." (*Ibid.*)

---

added more to the Vehicle Code than intended, it is an accepted maxim of jurisprudence "superfluity does not vitiate." (Civ. Code, § 3537.)

It appears the Legislature carefully balanced the various interests involved before enacting section 17004.7, which implicitly acknowledges public agencies who choose to adopt a written policy for vehicular suspect pursuits should not have their coffers emptied as a result of the actions of a third party fleeing suspect. It narrowly worded the statute to only grant immunity where the suspect's vehicle is involved in the accident with an innocent third party and where the public agency has satisfied the requirement of a written policy which complies with certain specific points to encourage safe police pursuits.

Weiner urges an additional requirement be read into the statute before a public agency can receive immunity. He suggests a factual determination must be made in each case as to whether the written policy is complied with "in practice." Effectively, then, each pursuit case would require a trial in order to determine whether the statutory immunity provisions are applicable. Such added fact-finding procedures would only defeat the purpose of the immunity granted under section 17004.7, which is to provide a defense for an entity even in the face of negligence by one of its employees. Moreover, in order to find such a requirement, Weiner is asking us to rewrite the statute which we cannot do. (See *Mount Vernon Memorial Park* v. *Board of Funeral Directors & Embalmers* (1978) 79 Cal.App.3d 874, 884-885 [145 Cal.Rptr. 275].) The plain language of the statute provides the determination of whether a written policy complies with its requirements "is a question of law for the court." (§ 17004.7, subd. (d).)

It is obvious the Legislature, as part of a careful analysis of a difficult policy area, has offered limited immunity to public entities which have adopted appropriate written pursuit policies. Normally, enforcement of written policies of public agencies is the responsibility of those agencies themselves and not that of the courts. We do not believe the Legislature in enacting this statute intended to abandon traditional principles of administrative responsibilities in favor of some form of implied judicial supervision of the implementation of written policies the Legislature has encouraged. We decline to create such a role for the court in the absence of legislative authorization.

Our conclusion section 17004.7 requires no proof of "in practice" compliance is further supported by the recent legislative analysis and holding in *Kishida* v. *State of California* (1991) 229 Cal.App.3d 329 [280 Cal.Rptr. 62]. In response to the assertion there section 17004.7 requires proof the written policies actually were employed, the court stated: "Nowhere does the statute require that the grant of immunity be predicated on proof that the pursuing officer followed the standards and the guidelines, contained in the policy, during a given chase for which immunity is sought. Had the

Legislature intended that the employer-entity prove in each instance that the employee-officer followed the guidelines in order to invoke the immunity, the statute would have said so." (*Id.* at p. 337, fn. omitted.) We agree.

Finally, our independent review (see *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 356 [175 Cal.Rptr. 226]) reveals City's written policy complies with each factor set forth in section 17004.7, subdivision (c).[4] The procedures for initiating a pursuit, designating the primary pursuit vehicle and the total number of vehicles to be involved at any one time in the pursuit are contained in sections I and III of the Pursuit Procedures. (See §§ I, subds. (A)-(D), III, subds. (A)(1) and (2), (C)(2) and (3), (D).) When a pursuit is initiated, section III, subdivisions (A)(2) and (B) provide for supervisory control of the pursuit. Section III, subdivision (G) provides for coordinating operations with other jurisdictions and subdivision (D) discusses the policies and guidelines concerning termination of a pursuit. The interests of public safety are discussed throughout the entire written document.

Weiner's complaints the language of City's written policy is not specific enough concerning the interests of public policy and the trial court applied an incorrect standard in finding the policy "substantially complied" with the statute are meritless. Because the facts of each situation from which a pursuit might arise are different, a certain amount of leeway is necessary in any written policy to allow for supervisory discretion in determining when a pursuit is initiated and terminated. The procedures and guidelines provided for in City's vehicular pursuit policy provide for such discretion without sacrificing the interests of caution and safety. The policy provides for communication and supervision to enable continuous monitoring of the reasonableness of the particular pursuit. Thus the trial court correctly recognized the policy as written satisfied the requirements of section 17004.7, subdivision (c).

The fact the court in its written order used the language that the policy "substantially" complied with the statute does not change our determination. If the result below was right, we will affirm whether or not the ground upon which the trial court relied was correct. (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 511 [146 Cal.Rptr. 614, 579 P.2d 505].)

---

[4] We have taken judicial notice, as the trial court did, of City's resolution No. R-271895, which adopted San Diego Police Department Procedure 1.3, Pursuit Procedures, and all pertinent documents concerning those procedures, submitted as exhibit "A" for the demurrer at the trial court level. (Evid. Code, §§ 452, 453.)

## DISPOSITION

Judgment affirmed.

Froehlich, J., and Amos, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 1991. Broussard, J., was of the opinion that the petition should be granted.

---

* Assigned by the Chairperson of the Judicial Council.