[No. A057727. First Dist., Div. Four. Dec. 22, 1993.]

DAVID BERMAN, Plaintiff and Appellant, v.
CITY OF DALY CITY et al., Defendants and Respondents.

Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Philip Borowsky and Dennis Kruszynski for Plaintiff and Appellant.

Branson, Fitzgerald & Howard, Joseph C. Howard, Jr., and Andrew H. Pontious for Defendants and Respondents.

**OPINION**

**REARDON, J.**—Plaintiff David Berman appeals from a summary judgment entered in favor of defendants City of Daly City (Daly City) and Police Officer Joseph Crivello on his complaint for damages for personal injuries and for violation of his civil rights which occurred when the car of a fleeing criminal suspect being pursued by Officer Crivello struck a car driven by

Berman.[1] In granting summary judgment, the trial court ruled (1) that as to Berman's state cause of action, both Officer Crivello and Daly City were immune from liability (Veh. Code, §§ 17004, 17004.7),[2] and (2) that as to the federal civil rights cause of action under 42 United States Code section 1983 (hereafter section 1983), no facts existed upon which to state a claim that Berman's constitutional rights had been violated.

In his appeal, Berman contends, inter alia, that Daly City's vehicular pursuit policy does not provide sufficiently specific guidelines for initiating and terminating vehicular pursuits so as to render Daly City immune from liability under section 17004.7, subdivisions (b) and (c)(4).[3] Concerning his federal claim, Berman argues (1) an innocent third party injured in a vehicular pursuit has a Fourteenth Amendment cause of action under section 1983, and (2) state immunities do not protect Officer Crivello and Daly City from liability for section 1983 causes of action.

We agree with Berman's state law claim that Daly City's vehicular pursuit policy does not provide sufficiently specific guidelines for determining when to initiate or terminate a pursuit so as to comply with subdivision (c)(4) of section 17004.7. The trial court therefore erred in granting summary judgment as to defendant Daly City based on its immunity from liability on Berman's state cause of action. In all other respects, however, we uphold the trial court's determinations.

---

[1]We note that in his opening brief, Berman states his appeal is from an oral order granting summary judgment, a minute order granting summary judgment, a written order granting summary judgment dated March 26, 1992, and the judgment dated July 15, 1992. First, it is textbook law that an order granting summary judgment is not an appealable order; the appeal must be taken from the subsequent judgment. (*Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 76, p. 100.)

Next, we note that Berman's notice of appeal filed April 3, 1992, states that it is from the "Order Granting Motion for Summary Judgment and Judgment" filed March 26, 1992. A "Notice of Entry of Judgment" was filed on March 31, 1992. On July 15, 1992, the court filed a document entitled "Judgment by Court Under CCP § 437c."

The record is ambiguous as to whether the actual judgment was filed on March 26 or July 15, 1992. If the March 26 document is the final judgment, the notice of appeal filed April 3 was timely filed. If, instead, the judgment was not filed until July 15, we exercise our discretion to treat the premature notice of appeal as if it was timely filed immediately after entry of the July judgment. (Cal. Rules of Court, rule 2(c).) In either event, the case is properly before us.

[2]Unless otherwise stated, all section references are to the Vehicle Code.

[3]Berman does not challenge that portion of the trial court's ruling that, as to the state cause of action, Officer Crivello is immune from liability under section 17004. (See *Brummett* v. *County of Sacramento* (1978) 21 Cal.3d 880, 883 [148 Cal.Rptr. 361, 582 P.2d 952, 4 A.L.R.4th 858]; *Colvin* v. *City of Gardena* (1992) 11 Cal.App.4th 1270, 1276 [15 Cal.Rptr.2d 234].)

## I. FACTS

On December 8, 1990, Joseph Crivello, while acting in his capacity as a Daly City police officer, initiated a high-speed chase in pursuit of Manuel Sanchez, a suspected criminal. Officer Crivello pursued Sanchez onto Highway 101, in the wrong direction. Sanchez's car collided with a car driven by appellant Berman. Both Berman and his passenger, James Szafranski, were injured.

Berman and Szafranski brought separate actions against Daly City and Officer Crivello.[4] In his action, Berman alleged two causes of action against Officer Crivello and Daly City: (1) gross negligence and reckless misconduct; and (2) violating Berman's federal civil rights pursuant to section 1983.

Daly City and Officer Crivello moved for summary judgment on the ground that they were immune from liability. (§§ 17004, 17004.7.) The moving papers included a copy of a six-page "General Order Number 18" (the pursuit policy) issued by Daly City's chief of police relating to the operation of police vehicles and police pursuits. In opposing summary judgment, Berman argued that state immunity provisions do not apply to his section 1983 allegations.

The trial court granted summary judgment in favor of Daly City and Officer Crivello on the grounds that each was immune from liability under the state cause of action, and that no facts existed to state a federal cause of action for the violation of Berman's constitutional rights under section 1983.

## II. DISCUSSION

A. *Compliance of Pursuit Policy With Section 17004.7*

1. *The Statute*

■ Appellant contends, in part, that Daly City's vehicular pursuit policy does not provide sufficiently specific guidelines for initiating and terminating vehicular pursuits so as to render Daly City immune from liability under subdivision (c)(4) of section 17004.7.

■ Section 17004.7 has two purposes. First, it is intended to confer immunity on governmental entities. Second, it is intended to reduce the

---

[4]Szafranski v. City of Daly City (Super. Ct. San Mateo County No. 361710); Berman v. City of Daly City (Super. Ct. San Mateo County No. 367461).

frequency of accidents. (*Payne* v. *City of Perris* (1993) 12 Cal.App.4th 1738, 1744 [16 Cal.Rptr.2d 143]; *Hooper* v. *City of Chula Vista* (1989) 212 Cal.App.3d 442, 456 [260 Cal.Rptr. 495].)

Section 17004.7 provides, in pertinent part: "(b) A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle. [¶] (c) If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards: [¶] (1) It provides that, if available, there be supervisory control of the pursuit. . . . [¶] (4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated. [¶] (d) A determination of whether a policy adopted pursuant to subdivision (c) complies with that subdivision is a question of law for the court."

2. *Recent Case Law*

To obtain immunity, a public entity must adopt a pursuit policy containing guidelines which comply with the statute. In support of his position, Berman relies upon two recent cases, *Colvin* v. *City of Gardena, supra,* 11 Cal.App.4th 1270 and *Payne* v. *City of Perris, supra,* 12 Cal.App.4th 1738. In *Colvin,* Division Three of the Second District stated: "Applying the ordinary meaning of guidelines to section 17004.7, subdivision (c)(4), it is clear the Legislature contemplated public entities seeking immunity must adopt reasonably specific criteria to give direction to officers in the field." (11 Cal.App.4th at p. 1282.) That court was convinced that "policies must clearly and with specificity set forth standards to guide officers in the field. If such factors are not detailed, there has not been compliance with section 17004.7, subdivision (c), and immunity does not attach." (*Id.,* at p. 1283.) After reviewing Gardena's pursuit policy as it related to initiating and terminating vehicular pursuits, the *Colvin* court held that the policy lacked the guidelines required by subdivision (c)(4) of section 17004.7. (11 Cal.App.4th at pp. 1283-1285.) The City of Gardena therefore did not enjoy the immunity granted by the statute. (*Id.,* at p. 1287.)

In *Payne* v. *City of Perris, supra,* 12 Cal.App.4th 1738, Division Two of the Fourth District stated that to confer immunity, a pursuit policy "must do

more than simply advise the pursuing officers to exercise their discretion and use their best judgment. . . . [¶] A policy which merely memorializes the unfettered discretion to initiate or terminate a pursuit or which allows each officer to use his or her own subjective standards for determining when a pursuit should be initiated, continued or terminated fails to provide any entity control. It wholly fails to provide any assurance that unnecessarily dangerous pursuits will not be undertaken and does nothing to reduce the frequency of accidents." (*Id.*, at pp. 1746-1747.) The *Payne* court, too, found that the City of Perris's pursuit policy failed to comply with subdivision (c)(4) and concluded that the city was not entitled to the immunity provided for under section 17004.7. (12 Cal.App.4th at p. 1751.)[5]

### 3. *Daly City's Pursuit Policy*

#### a. *Initiation of Pursuit*

 Looking to Daly City's pursuit policy, it states: "Pursuits should normally be initiated when, in the officer's judgement, an individual clearly exhibits an intent to avoid arrest by using a vehicle to flee." (Gen. Order No. 18, subd. 3b(1).) The policy also states that: "(1) Officers intending to stop a vehicle should be within close proximity to the violator's vehicle before using the red lights and siren and attempting to stop the vehicle.. . . . [¶] (2) Pursuit should be initiated and continued when such threat to safety is not out of proportion to the offense or offenses involved." (Gen. Order No. 18, subd. 3c(1), (2).)

---

[5]In addition to relying upon *Colvin* and *Payne*, Berman has requested this court to take judicial notice of our unpublished opinion in the companion case of *Szafranski* v. *City of Daly City* (May 13, 1993) A057855, review denied August 11, 1993. Szafranski, the passenger in Berman's car, brought a separate action against Daly City and Officer Crivello. (See fn. 4, *ante.*) Although ordinarily an unpublished opinion may not be cited or relied on by a court or party in another action (Cal. Rules of Court, rule 977(a)), an exception exists "when the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel . . . ." (*Id.*, rule 977(b)(1).) Berman contends the doctrine of collateral estoppel applies in this case in that (1) the same legal issue—the validity of Daly City's pursuit policy—is litigated in each action; (2) the party against whom the doctrine is asserted, Daly City, is the same in each action; and (3) Daly City had the same motive and opportunity to defend that issue in each action. Daly City has not opposed Berman's request.

As each case involves the same legal issue and turns on essentially the same facts, it is proper for Berman to cite and rely upon our unpublished opinion in *Szafranski* to support his claim that Daly City is collaterally estopped from relitigating the sufficiency of its pursuit policy under the statute. (*Verdugo Hills Hospital, Inc.* v. *Department of Health* (1979) 88 Cal.App.3d 957, 962, fn. 6 [152 Cal.Rptr. 263].) Nevertheless, while we are taking judicial notice of our decision in *Szafranski*, we choose not to rely upon it except to note that it is consistent with the decision we reach in this case. We will proceed to decide the issue in this case in accord with other published opinions and to then publish our opinion so as to notify other public agencies which may be adopting a policy on vehicular pursuits as to what is required under section 17004.7. (*Ibid.*)

Although Daly City's pursuit policy does set forth general principles on initiating a pursuit, it does not provide officers in the field with sufficient "guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit . . . ." (§ 17004.7, subd. (c)(4).) For example, according to the policy, a pursuit could be initiated based upon any offense, even a minor Vehicle Code violation. In contrast, the San Diego pursuit policy, which was examined in *Colvin* v. *City of Gardena, supra,* 11 Cal.App.4th 1270, and *Weiner* v. *City of San Diego* (1991) 229 Cal.App.3d 1203 [280 Cal.Rptr. 818], allows for initiation of pursuit only when "a known wanted felon is in the vehicle or the occupants of the vehicle have committed a crime in the officer's presence." (*Colvin, supra,* at p. 1284.)

Moreover, based on the declared intent of the pursuit policy, it is unclear whether the "threat to safety" refers to officer safety or public safety. The pursuit policy states: "These guidelines are intended to reduce the hazards to officers engaged in hot pursuit and the public criticism following accidents involving pursuing vehicles." (Gen. Order No. 18, subd. 3b(4).) Neither of these intentions coincides with the purpose of section 17004.7, subdivision (c)(4), which is to provide guidelines relating to *public* safety and effective law enforcement.

Furthermore, there are no reasonably specific criteria to guide officers in determining when a threat to public safety is out of proportion to the offense or offenses involved. "[T]he policy must do more than simply advise the pursuing officers to exercise their discretion and use their best judgment." (*Payne* v. *City of Perris, supra,* 12 Cal.App.4th at pp. 1746-1747.) The pursuit policy before us leaves that determination to the officer's subjective judgment. Such vague language does not meet the requirements of section 17004.7, subdivision (c)(4). (12 Cal.App.4th at pp. 1747-1748; *Colvin* v. *City of Gardena, supra,* 11 Cal.App.4th at pp. 1283-1285.)

b. *Termination of Pursuit*

Concerning the termination of pursuit, Daly City's pursuit policy provides that: "The officer is expected to use sound professional judgement in deciding whether or not the threat to safety of further pursuit outweighs the benefit to the public should the arrest be made." (Gen. Order No. 18, subd. 3g(2).) Yet the policy provides insufficient guidance to officers regarding factors to consider when making that judgment.

The pursuit policy goes on to state: "Under most circumstances, pursuits should be discontinued when: [¶] (a) In the officer's opinion, a serious hazard is present to the public and/or the pursuing officer. [¶] (b) The

pursued vehicle's location is no longer definitely known. [¶] (c) The suspect(s) can be identified to the point where later apprehension can be accomplished AND CONTINUED PURSUIT WOULD SERVE NO USEFUL PURPOSE. [¶] (d) When ordered by a supervisor." (Gen. Order No. 18, subd. 3g(4).)

Although this portion of the policy is somewhat more specific than that relating to the initiation of a pursuit, the criteria listed are still insufficient to "control and channel the pursuing officer's discretion" to enable the officer to determine when a serious hazard is present or when continued pursuit of an identified suspect would serve no useful purpose. (*Payne* v. *City of Perris*, *supra*, 12 Cal.App.4th at p. 1747.) The Daly City pursuit policy regarding termination of pursuit does not satisfy the requirements of section 17004.7, subdivision (c)(4).

Looking once again to the San Diego pursuit policy discussed previously, that policy sets forth "the following factors an officer should consider in determining whether a pursuit should be terminated: vehicular traffic, pedestrian, roadway and environmental conditions; the violation for which the suspect is wanted; whether the suspect is known to be a juvenile; and, whether the suspect has been identified to the point that later·apprehension can be accomplished." (*Colvin* v. *City of Gardena*, *supra*, 11 Cal.App.4th at p. 1284, italics omitted.)

The City of San Francisco's pursuit policy states that a pursuit should be discontinued when an unreasonable danger exists to the officers or others. Its guidelines go on to state: " 'An unreasonable danger exists when speeds dangerously exceed the normal flow of traffic or when vehicular or pedestrian traffic necessitates dangerous maneuvering exceeding the performance capabilities of the vehicle or driver, or when the reason for apprehending the pursued vehicle clearly is outweighed by the risk of harm imposed on the person or property of the officers or others if the pursuit is continued.' " (See *Colvin* v. *City of Gardena*, *supra*, 11 Cal.App.4th at p. 1284.)

In *Payne* v. *City of Perris*, *supra*, 12 Cal.App.4th 1738, the court commended the Bellevue, Washington Police Department policy, which provides that the following factors be considered when determining whether any pursuit should be initiated, continued or terminated: " '(1) the seriousness of the originating crime and its relationship to community safety; [¶] (2) safety of the public in the area of the pursuit; [¶] (3) safety of the pursuing officer(s); [¶] (4) volume of vehicular traffic; [¶] (5) volume of pedestrian traffic; [¶] (6) location of pursuit; [¶] (7) speeds involved; [¶] (8) time of day; [¶] (9) weather conditions; [¶] (10) road conditions; [¶] (11) familiarity

of the officer and supervisor or commander with the area of pursuit; [¶] (12) quality of radio communications between pursuing unit(s) and the dispatcher and supervisor; and [¶] (13) the capability of the police vehicles involved.'" (*Id.*, at pp. 1749-1750.)

We need not and do not decide whether and to what extent these other policies comply with the minimum standards of section 17004.7, subdivision (c)(4). We have examined these policies simply to illustrate factors considered relevant by other public entities in drafting pursuit policies which do give guidance to officers in the field without unduly restricting their discretion.

In *Payne* v. *City of Perris, supra,* 12 Cal.App.4th 1738, the court stated: "To provide effective entity control and thereby possibly reduce the frequency of accidents, the policy must control and channel the pursuing officer's discretion by providing objective standards by which to evaluate whether the pursuit should be initiated or terminated. At the very least it should instruct and direct the officers on what factors should be considered in deciding whether to pursue the fleeing suspect." (*Id.*, at p. 1747, fn. omitted.)

We conclude that the Daly City pursuit policy fails to provide the minimum guidelines required by section 17004.7, subdivision (c)(4). The trial court therefore erred when it granted summary judgment in favor of Daly City on this issue.

In so holding, we do not address the question of Daly City's ultimate liability under state law. We only determine that the city is not immune under the provisions of section 17004.7.

## B. *Berman's Civil Rights Claim Under Section 1983*

Berman also contends that the trial court erred in granting summary judgment in favor of Daly City and Officer Crivello because an innocent third party injured in a vehicular pursuit can assert a Fourteenth Amendment constitutional claim under section 1983.[6]

It is well established that a constitutional cause of action is wholly separate and independent from a state cause of action, even where the same

---

[6]Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

conduct gives rise to both. (*Monroe* v. *Pape* (1961) 365 U.S. 167, 183 [5 L.Ed.2d 492, 502-503, 81 S.Ct. 473].) Although a plaintiff's cause of action may be barred by public entity immunity under state law, this does not shield a city or its employees from liability under section 1983 for deprivation of a person's civil rights under color of law. (*Buenavista* v. *City and County of San Francisco* (1989) 207 Cal.App.3d 1168, 1174 [255 Cal.Rptr. 329].)

■ State courts look to federal law to determine what conduct will support an action under section 1983. (*Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 560 [195 Cal.Rptr. 268].) The first inquiry in any section 1983 suit is to identify the precise constitutional violation with which the defendant is charged. (*Graham* v. *Connor* (1989) 490 U.S. 386, 394 [104 L.Ed.2d 443, 453, 109 S.Ct. 1865].) In *Brower* v. *Inyo County* (1989) 489 U.S. 593 [103 L.Ed.2d 628, 109 S.Ct. 1378], the Supreme Court found that a Fourth Amendment cause of action under section 1983 could be sustained by a fleeing *suspect* injured or killed in a vehicular pursuit. Because the suspect in that case alleged that he was stopped by a roadblock put in place to stop him, his complaint stated a claim of Fourth Amendment "seizure." (489 U.S. at p. 599.) The Supreme Court declined to address the issue of what constitutional rights an innocent third party might have in a police pursuit.

■ Berman asserts that several circuits have recognized the right of innocent third parties injured during a police pursuit to bring a section 1983 cause of action under the Fourteenth Amendment. (See *Medina* v. *City and County of Denver* (10th Cir. 1992) 960 F.2d 1493; *Rucker* v. *Harford County, Md.* (4th Cir. 1991) 946 F.2d 278; *Temkin* v. *Frederick County Com'rs* (4th Cir. 1991) 945 F.2d 716; *Landol-Rivera* v. *Cruz Cosme* (1st Cir. 1990) 906 F.2d 791; *Roach* v. *City of Fredericktown, Mo.* (8th Cir. 1989) 882 F.2d 294; *Frye* v. *Town of Akron* (N.D.Ind. 1991) 759 F.Supp. 1320 [7th Circuit].) A review of these rulings by other circuits, however, leaves us convinced that the facts as alleged by Berman fail to establish a section 1983 cause of action in violation of the Fourteenth Amendment.

In our case, Officer Crivello engaged in a high-speed vehicular pursuit of Sanchez, the fleeing suspect. Sanchez eventually drove the wrong way up a freeway off-ramp onto Highway 101. The officer was pursuing Sanchez against the flow of traffic when the suspect's car struck Berman's vehicle.

In *Landol-Rivera* v. *Cruz Cosme*, *supra*, 906 F.2d 791, a hostage was accidentally shot in the jaw by a police officer attempting to stop a robber's escape. The victim brought a section 1983 claim against the police officer, alleging an unconstitutional use of deadly force. While the First Circuit focused its analysis on why a third party could not state a Fourth Amendment claim, it went on to state that the plaintiff could bring a claim under the

Fourteenth Amendment alleging a deprivation of life, liberty or property without due process as a result of the police shooting, but only if the officer's conduct reflected " 'a reckless or callous indifference to an individual's rights.' " (906 F.2d at p. 796.) An allegation of negligence would be insufficient. (*Id.*, at p. 797.) The court held, however, that such a claim failed as a matter of law on the facts before it. (*Id.*, at p. 798.)

*Temkin* v. *Frederick County Com'rs, supra,* 945 F.2d 716 involved a high-speed pursuit during which the suspect's vehicle collided with a third party motorist. The Fourth Circuit held that in order to find a violation of the substantive guarantees of the due process clause independent of the absence or presence of postdeprivation remedies available through state tort law, the conduct involved must be such as "shocks the conscience." (*Id.*, at p. 720.) The court in *Temkin* cited evidence that the chase had continued for a significant period of time; it continued at a very high rate of speed; it was initiated because of a minor violation; the police had a partial license plate identification of the suspect vehicle; the chase violated a departmental pursuit policy in that the officer failed to maintain radio contact with his supervisor throughout; and there was expert deposition testimony that the officer's conduct was " 'reckless,' " " 'totally irresponsible,' " and " 'wanton.' " The Fourth Circuit nevertheless concluded that the officer's conduct, "while disturbing and lacking in judgment, falls short of the 'shocks the conscience' standard we adopt today." (*Id.*, at p. 723.) The court affirmed a summary judgment on behalf of the defending officer and county.

In support of its ruling in this case, the trial court cited *Jones* v. *Sherrill* (6th Cir. 1987) 827 F.2d 1102. In *Jones*, a police officer engaged in a high-speed pursuit of a fleeing suspect along a two-lane roadway in a populated area during which the suspect crossed the centerline and collided head-on with plaintiff's car. The trial court granted a motion to dismiss. On review, the Sixth Circuit held that the police officer's conduct in pursuing the suspect did not rise to the level of "gross negligence and outrageous conduct necessary to sustain a section 1983 claim . . . ." (*Id.*, at p. 1106.) The court reasoned that the facts alleged "must be sufficient to charge the government officials with outrageous conduct or arbitrary use of government power." (*Ibid.*) It stated that the plaintiff's remedy was to pursue an ordinary tort action under state law. (*Id.*, at p. 1107.)

Of the cases relied upon by appellant, the only one in which the plaintiff survived a pretrial ruling was *Frye* v. *Town of Akron, supra,* 759 F.Supp. 1320. In that case, the district court for the Northern District of Indiana denied a motion to dismiss an allegation that the officer had operated his vehicle with recklessness and conscious disregard for the safety of the

innocent third party victim. (*Id.*, at p. 1324.) In that case, the victim was a passenger on a motorcycle which the officer observed crossing over a double line. The officer chased the motorcycle over winding roads at night at speeds in excess of 90 miles an hour. The officer's vehicle "struck the motorcycle, forcing the motorcycle off the road and causing the motorcycle to strike a fence." (*Id.*, at p. 1322.) The motorcycle passenger died. In that case, the officer, after observing a traffic violation, engaged in a high-speed chase in dangerous circumstances culminating in an action by the officer himself which could be characterized as reckless, deliberately indifferent, or even intentional, resulting in the victim's death.

Our case is distinguishable. Although Officer Crivello's alleged conduct may be variously described as negligent, grossly negligent, or an act of bad judgment on his part, it falls short of what appears necessary to support a due process claim under the Fourteenth Amendment. We conclude that, as a matter of law, no facts exist to support Berman's constitutional claim under section 1983.

### III. CONCLUSION

The judgment in favor of the City of Daly City on the state cause of action, only, is reversed. In all other respects, the judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.